IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-30093
Summary Calendar
_____


AVONDALE INDUSTRIES, INC.,

Plaintiff-Appellant,

versus

INTERNATIONAL MARINE CARRIERS, INC., AND
UNITED STATES OF AMERICA, in personam,

Defendants-Appellees.

_____

Appeal from the United States District Court for
the Eastern District of Texas
(90 CV 4570)
_____
October 3, 1995

Before REAVLEY, SMITH and PARKER, Circuit Judges.

REAVLEY, Circuit Judge:[*]

Appellant Avondale Industries, Inc. (Avondale) brings this

second appeal of a judgment awarding a recovery to the United

States for damages caused to the USNS BELLATRIX.  Avondale's

property was also damaged when the vessel struck its dry dock.

Avondale argues that the district court, after remand from this

_____

[*]Local Rule 47.5 provides:  "The publication of opinions
that have no precedential value and merely decide particular
cases on the basis of well-settled principles of law imposes
needless expense on the public and burdens on the legal
profession."  Pursuant to that Rule, the Court has determined
that this opinion should not be published.

court, erred in the manner in which it allocated fault between Avondale and the government, and in failing to award certain damages to Avondale.  We affirm.

A.    Allocation of Fault

The district court originally found that the allision was solely the fault of Avondale's subcontractor, Pilot Thomas.  In the first appeal we held that the district court clearly erred in finding that no act or omission on the part of the master of the vessel, Captain Rivera, or his crew contributed to the accident. *Avondale v. International Marine Carriers, Inc.*, 15 F.3d 489, 493 (5th Cir. 1994).  We further concluded that under the relevant contract (1) the pilot's negligence was chargeable to Avondale, (2) the negligence of the vessel's captain and crew were chargeable to the government, and (3) damages to the vessel and Avondale's facilities should therefore be apportioned according to the comparative degree of fault of the two parties.  *Id*. at 494-95.  On remand the district court found that Avondale was 80 percent at fault and the government was 20 percent at fault.

The allocation of fault is a finding of fact subject to the clearly erroneous standard of review.  *Id*. at 492.  Avondale does not dispute that its negligence contributed to the accident, and indeed we concluded in the prior appeal that Avondale was partly at fault.[1]

---

[1]    "[T]he contract does not require Avondale to show that acts or omissions of the agents and employees of the Government and IMC were the sole proximate cause of the damage, and indeed, in this case they were not."  *Id*. at 495.

Instead, Avondale argues that the district court did not follow the law of the case established by our prior opinion, and instead "virtually ignored" and "paid only lip service to" that decision. We disagree. Our prior opinion did not require any particular allocation of fault, or suggest that the facts would only support an allocation of the greater proportion of fault to the government. If anything, our prior decision suggests otherwise. We noted that the primary responsibility for operating the vessel in these circumstances lies with the pilot.[2] We did not question the district court's findings that the pilot was affirmatively negligent in attempting to turn the vessel with only one operating engine, instead of two engines and two tugs.[3] We did however conclude that the captain failed "to pay attention so that he would know that he needed to intervene," and that the first mate who was aware that the pilot had released the first tug attempted to notify the bridge of this action, but failed to follow up on communicating this action after the first attempt

---

[2] "[T]he master has a duty to intervene when a compulsory pilot is on board only `in cases of the pilot's intoxication or manifest incapacity, in cases of danger he does not foresee, and in all cases of great necessity.' . . . The pilot's responsibilities are broad and he supersedes the master for the time being in the command and navigation of the ship and his orders must be obeyed in all matters connected with navigation." *Id*. at 492-93.

[3] "The district court found that the casualty was caused by Pilot Thomas because he (1) failed to wait until the BELLATRIX had both of her engines available before commencing the left turn down river; (2) prematurely released the AVON II from the turning maneuver; and (3) released the MISS SARAH before the BELLATRIX fully completed her turn and was safely headed down river." *Id*. at 492.

failed. *Id*. at 493. The actions of the captain and crew were acts of omission in failing to recognize the affirmative acts of negligence committed by the pilot, who was primarily in charge of the operation. The district court's allocation of fault is not clearly erroneous.

Avondale complains that the district court did not account for other alleged acts of negligence by the crew of the BELLATRIX. First, it argues that one of the third mates became aware that an accident would probably occur approximately five minutes before the casualty, and said nothing. Avondale fails to establish that this silence, even if negligent, was a proximate cause of the accident. The government points out that the pilot was aware that he had released the tugs, that the third mate in question repeatedly advised the pilot that one engine was unavailable, and that another third mate did advise the pilot that he did not think the vessel would make the turn.

Avondale also complains that the district court ignored findings of the Coast Guard that the accident occurred in part because "the Master failed to counter the pilot's order and thus prevent the accident," and because of the failure of the starboard engine. The district court did admit the Coast Guard report. The report found fault with both the pilot and the master, and the court was not required to afford it any particular weight. Regardless, the report did not attempt to apportion fault. Further, the district court, in allocating fault, did take into account the master's duty to intervene and

4

failure to adequately monitor the situation, and the inoperable engine.  The Coast Guard report does not alter our conclusion that the district court's allocation of fault, in light of all the relevant facts, was not clearly erroneous.

Avondale argues that the vessel was unseaworthy because the rudder functioned improperly.  It points to brief testimony from a third mate that at one point the rudder was far left yet the ship swung right.  The third mate did not explain why this movement occurred, and testified that another crew member confirmed that the rudder was hard left as ordered.  This brief, inconclusive, uncorroborated testimony does not render the district court's liability findings clearly erroneous.

B.   Damages

After allocating fault, the district court considered the damages sustained by Avondale and the government.  It agreed with most of the damages Avondale claimed, but granted it only about half the overhead damages it claimed, and none of the lost profits it claimed.

When repairs are performed internally, overhead charges for the use of one's own labor, materials, and equipment are recoverable.[4]  Avondale claimed overhead equal to almost 100% of labor costs.  Its only evidence was testimony from its own manager of financial projects, who stated that this percentage had been used by Avondale in 1989 and 1990.  He explained the

---

[4]     *Boh Bros. Const. Co. v. M/V Tag-Along*, 569 F.2d 217, 219 (5th Cir. 1978); *Freeport Sulphur Co. v. S/S Hermosa*, 526 F.2d 300, 303-4 (5th Cir. 1976).

various components of overhead, and that the Navy had approved Avondale's methodology, but "had not made a final audit of dollars." Avondale's shipyard is primarily a shipbuilding and not a repair facility. The court found that Avondale had not shown it proof of "the accuracy of the overhead percentage as to the period of these repairs," and awarded overhead of 50 percent of labor costs. The government files no cross-appeal on this award. We agree with the district court that while Avondale offered evidence of the various components of overhead that might be attributable to the repair work, it offered no underlying proof as to the accuracy of the percentage it claimed for this particular work. We will not disturb the district court's award.

Finally, Avondale complains that the district court erred in refusing its request for a 15 percent profit. A plaintiff who effects his own repairs may recover lost profits for "the use of its own equipment which might otherwise be engaged in profitable outside employment." *Boh Bros.*, 569 F.2d at 219. Avondale admitted at trial, however, that it did not turn away any business as a result of the accident.

AFFIRMED.